UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GIOVANNI GALINDO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-6453 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CAFÉ 23 INC. and | ) | |
| BERTHA L. SANCHEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Giovanni Galindo, a cook, sued his former employer in 2021 to recover unpaid wages. He alleged that he was long on hours, and short on pay. At bottom, the complaint is about his employer's failure to deliver on time.

That theme proved to be prescient. In the year and a half since the filing of the complaint, Defendants Café 23 and Bertha Sanchez (the owner) have missed deadline after deadline. They have failed to comply with their basic obligations to produce discovery, over and over, again and again. And nothing seems to faze them. Not the Federal Rules. Not broken promises. Not agreements with opposing counsel. Not Court orders. Not repeated admonitions by the judiciary.

Defendants have not lacked in second chances. They have received extension after extension. The goalposts moved so many times that they are, at this point, out of the stadium. And each time, Defendants crossed boundaries and failed to deliver. Admonishment after admonishment has had little effect.

Courts shouldn't have to beg litigants to comply with their orders. After all, court orders are The Law. Parties have to comply, like it or not, or face the consequences. Enforcing that principle is critical. If parties believe that they can do what they want, on their preferred timetable, the entire system would break down.

Parties who repeatedly flout court orders impose significant costs on other parties, and on the judicial process itself. It drains judicial resources – a valuable public good – if courts have to order parties to comply over and over again. It is not fair to the opposing party who waits for compliance. And it is not fair to the countless parties in hundreds of other cases on this Court's docket, who have to wait for the Court's attention while Defendants get chased.

The chase is over. For the second time, Galindo filed a motion for a default judgment based on Defendants' serial non-compliance. Defendants' discovery responses are overdue, and so is the need to end the case. The motion for a default judgment is hereby granted.

## Background

The Court begins by retelling the story of Defendants' failure to produce discovery in a timely manner, and failure to comply with Orders from this Court and Judge Cole.

Giovanni Galindo worked as a cook at Café 23, a breakfast restaurant in Melrose Park, Illinois. He worked long hours, and he believed that he wasn't getting paid what he was owed.

Galindo ultimately sued the restaurant and its owner and president, Bertha Sanchez, in 2021. *See* Cplt. (Dckt. No. 1). The complaint included a claim under the Fair Labor Standards Act, and a claim under the Illinois Minimum Wage Law. *Id.* at ¶¶ 2, 10–20, 22. Galindo seeks approximately $15,000 in unpaid overtime, plus liquidated and treble damages. *See* Status Report (Dckt. No. 9).

*The Late Joint Initial Status Report*

The parties got off to a slow start when it came to meeting this Court's deadlines. Early on, this Court ordered the parties to file an initial status report by February 15, 2022. *See* 12/2/21 Order (Dckt. No. 4). When the deadline came, the parties requested an extension until February 22, 2022, which the Court granted. *See* 2/15/22 Order (Dckt. No. 7). The parties missed that deadline by two days. *See* 2/24/22 Joint Initial Status Report (Dckt. No. 9).

This Court responded by setting boundaries and announcing clear expectations. "Going forward, the Court expect[s] counsel to meet all deadlines." *See* 2/28/22 Order (Dckt. No. 10).

Most of the time, a gentle nudge and an early warning from the Court is all it takes to get parties back on track. Making sure that parties get with the program is an essential component of managing litigation and "establishing early and continuing control." *See* Fed. R. Civ. P. 16(a)(2). Litigation cannot proceed in an orderly manner if parties skip deadlines and disregard Court orders. If parties think that they can do what they want, whenever they want, chaos ensues.

For whatever reason, the message did not sink in with Defendants. In fact, missing the first deadline was merely an early preview of the non-compliance to come. A recurring pattern emerged in the months that followed: this Court and Judge Cole issued orders and set deadlines, and Defendants did not comply.

*The Failure to Engage in Court-Ordered Settlement Discussions*

Defendants extended their streak of non-compliance right off the bat. The Court ordered Defendants to respond in writing to Galindo's settlement demand by March 15, 2022. *See* 2/28/22 Order (Dckt. No. 10). Defendants did not comply with that Order. They missed the deadline.

One week later, the parties filed a joint status report and revealed that Defendants had missed the deadline. Defendants tried to make up for their delinquency by "tak[ing] the time now to formally reject the settlement demand of Plaintiff." *See* 3/22/22 Joint Status Report, at 1 (Dckt. No. 11).

That second failure to meet deadlines was not lost on the Court, especially after its earlier admonishment. *See* 3/28/22 Order (Dckt. No. 12). So, the Court reiterated the importance of complying with Court deadlines. "Going forward, the parties must meet all Court deadlines." *Id.*

### *The Failure to Respond to Discovery*

Discovery followed. Galindo served Rule 26 disclosures and written discovery requests on Defendants on March 22, 2022. Galindo requested that Defendants respond by April 22, 2022. Defendants did not meet that deadline.

In the next status report, defense counsel explained that he had fallen at home, fracturing three ribs and suffering a partially collapsed lung. *See* 5/31/22 Joint Status Report, at 1 (Dckt. No. 13). It was not clear when this accident occurred. But because of the injuries, defense counsel's "first full week in the office was the last week of May [2022]." *Id.* So, Defendants requested "21 days to respond to Plaintiff's discovery, propound their own discovery to Plaintiff, and present another [joint status report] to the Court prior to the end of June[] 2022." *Id.*

That explanation was understandable, so the Court granted the request for more time. *See* 6/1/22 Order (Dckt. No. 14). This Court routinely grants extensions for medical reasons, without batting an eye.

In a minute order, the Court noted that "[d]efense counsel suffered an accident at home." *Id.* "The Court expresse[d] its well wishes to counsel, and hopes for a full and speedy recovery."

4

*Id.* The Court also permitted Defendants to respond to the discovery requests by June 30, 2022. *Id.*

In fact, this Court gave defense counsel a longer extension than he had requested. Defense counsel "requested three additional weeks," but this Court *sua sponte* "added some extra time." *Id.* That is, the Court understood that sometimes attorneys miss deadlines when health issues come into play. And the Court wanted to make sure that defense counsel healed up and had enough time to respond to Plaintiff's discovery requests.

***The Failure to Produce***

The Court directed the parties to file another joint status report by July 8, 2022. *Id.* Unfortunately, Defendants did not comply with that Order.

Instead, the Court received a status report from Plaintiff only. *See* Pl.'s 7/14/22 Status Report (Dckt. No. 15). Plaintiff revealed that he had sent Defendants a draft version of the status report "in a timely manner," but Defendants had not responded. *Id.*

The news wasn't any better when it came to discovery. "Defendants still have not responded to discovery" requests. *Id.* And Defendants weren't engaged in settlement talks, either. Despite rejecting Plaintiff's settlement demand on March 22, 2022, Defendants had yet to make a counteroffer. *Id.*

Plaintiff revealed that he "intend[ed] to file a Motion to Compel on July 15, 2022 if Defendants continue to fail to respond to discovery." *Id.*

This Court then issued another Order, noting that "[d]efense counsel did not join the report and has not responded to Plaintiff's counsel. Defendants have not responded to discovery, either." *See* 8/1/22 Order (Dckt. No. 16).

5

However, the Court had not forgotten about defense counsel's health issues. The Court wondered whether Defendants had missed the deadline because "defense counsel is still recuperating." *Id.* So, the Court ordered the parties to file a supplemental status report by August 12, 2022. *Id.*

***The First Motion to Compel***

In the meantime, Plaintiff filed a motion to compel on August 9, 2022. *See* Pl.'s Mtn. to Compel (Dckt. No. 17). This Court denied that motion without prejudice because of the failure to meet and confer. *See* 8/10/22 Order (Dckt. No. 18).

Defendants had not responded to discovery, but Plaintiff's counsel had called defense counsel only twice to discuss the requests. *Id.* ("Plaintiff's counsel called defense counsel on May 4, and again on August 9, 2022, to discuss the request. That's three months later. And that's the day of filing the motion. Basically, Plaintiff has not pressed for the responses in three months. So after making a call to defense counsel, and hearing a full voicemail box, Plaintiff came to court. That's not enough. Plaintiff must do more to attempt to resolve the issue without Court intervention.").

The Court directed Plaintiff's counsel to continue to make efforts to reach defense counsel. *Id.* "If defense counsel proves to be unreachable, Plaintiff must file a statement summarizing all attempts to reach opposing counsel. In the meantime, the Court directs defense counsel to participate in good faith and engage in the litigation. A failure to comply will lead to appropriate relief." *Id.*

In its Order, the Court also "remind[ed] the parties of the obligation to file a joint status report by August 12, 2022." *Id.*

*The Extension of Discovery*

On that deadline, Plaintiff's counsel filed a status report on behalf of the "Parties" (but it was not signed by defense counsel). The report noted that Defendant promised to produce the discovery in a few days. "[T]he Parties' counsel conducted a telephonic conference; and Defendants' counsel agreed to produce responses to Plaintiffs' outstanding written discovery by Tuesday August 16, 2022." *See* 8/12/22 Status Report (Dckt. No. 19).

Plaintiff was on board with that extension. *Id.* The parties also requested a 45-day extension of fact discovery "to address the discovery issues and explore the possibility of settlement." *Id.*

The Court granted that request. *See* 8/16/22 Order (Dckt. No. 20). This Court extended fact discovery to September 30, 2022. *Id.* The Court also directed the parties to file another joint status report by October 7, 2022. *Id.*

*The Continued Failure to Produce Discovery*

The parties filed the joint status report on the due date. *See* 10/7/22 Joint Status Report (Dckt. No. 21). Unfortunately, they reported that they were not yet done with discovery because Defendants had not completed their document production.

The parties reported that Defendants had recently produced a payroll report for Galindo. But that was it. Defendants planned to produce the remaining documents on October 14, 2022. And the parties planned to meet on October 10 "to discuss both outstanding discovery and possible settlement of the case." *Id.*

In yet another Order, this Court called attention to the fact that Defendants had again missed the deadline to produce documents. *See* 10/11/22 Order (Dckt. No. 22). But even so, Defendants were "continuing to produce documents, and expect[ed] to complete [their]

7

production by October 14, 2022." *Id.* So, the Court "direct[ed] Defendant[s] to complete [their] document production by October 14, [2022]." *Id.*; *see also* 10/14/22 Order (Dckt. No. 23).

Defendants missed that deadline, too. A few weeks later, the parties filed yet another status report, letting the Court know that Defendants had not delivered what they had promised. "To date, Defendants have not produced discovery responses." *See* 10/28/22 Joint Status Report (Dckt. No. 25).

### *The Second Motion to Compel*

Plaintiff sprung to action yet again, filing a second motion to compel on October 26, 2022. *See* Pl.'s Second Mtn. to Compel (Dckt. No. 24). Plaintiff noted that "October 14, 2022 has passed, and Defendants have not responded to the written discovery requests." *Id.* at ¶ 10.

The motion summarized the non-responsiveness of defense counsel. Plaintiff's counsel tried to reach defense counsel by email on October 17. *Id.* at ¶ 11. No response. *Id.* So, Plaintiff's counsel tried again – this time by phone – on October 24. *Id.* at ¶ 12. Again, no response. *Id.*

Plaintiff's counsel tried again before filing the second motion to compel – by phone, and by email – on October 26. *Id.* at ¶ 13. And again, no response. *Id.*

### *The First Order from Judge Cole*

This Court referred Plaintiff's second motion to compel to Magistrate Judge Cole. *See* 11/7/22 Order (Dckt. No. 26); 11/7/22 Referral Order (Dckt. No. 27).

It took Judge Cole no time to figure out the lay of the land, and call a spade a spade. Judge Cole colorfully noted – as only Judge Cole can – that this Court did not give defense counsel "the option of 'ghosting' plaintiff's counsel." *See* 11/9/22 Order (Dckt. No. 28).

"The discovery requests at issue have been outstanding since March 2022." *Id.* But defense counsel had "continued to simply ignore plaintiff's counsel's entreaties." *Id.* When it came to getting defense counsel to comply with Plaintiff's discovery requests, "[n]othing has worked." *Id.*

So, Judge Cole granted Plaintiff's second motion to compel. *Id.* He directed Defendants to "comply with all discovery requests no later than November 14, 2022." *Id.*

Judge Cole ended his Order with a note of forewarning to Defendants and defense counsel: "Should the defendant[s] again fail to comply with a court order, upon an appropriate motion from the plaintiff, I will not hesitate to issue a recommendation to Judge Seeger that he enter a default judgment against the defendants." *Id.*

At that point, Defendants undoubtedly knew that they had burned through a bundle of second chances, and were officially out of rope. Judge Cole delivered the message loud and clear, and he didn't leave much room for ambiguity.

Defendants heard the message, but they did not get the message. Defendants did not comply with Judge Cole's Order to respond to all outstanding discovery requests by November 14, 2022. *See* Pl.'s 11/29/22 Mtn. for Default Judgment, at ¶ 11 (Dckt. No. 29).

***The First Motion for Default Judgment***

Galindo, in turn, moved for a default judgment as a sanction under Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure. *Id.* at ¶ 12. Plaintiff requested a default judgment of $62,949 and $4,520 in attorneys' fees and costs. *Id.* at ¶ 13.

In response, Defendants admitted "that they have not complied with Plaintiff's written discovery requests." *See* Defs.' Resp., at ¶ 1 (Dckt. No. 33). But they explained that defense counsel's personal issues were the reason for the noncompliance. *Id.* Defense counsel's brother

9

– and partner in his law practice – had been dealing with issues with his son (*i.e.*, defense counsel's nephew). *Id.* at ¶¶ 2–3. Defense counsel's nephew was suffering from substance abuse problems, which prevented defense counsel's brother from participating in the legal practice. *Id.* at ¶ 4.

Defendants also produced some documents at this time, accompanied by an attestation of completeness signed by Sanchez. *See* Sanchez Aff. (Dckt. No. 33-2).

***The Next Order from Judge Cole***

Judge Cole held a hearing on Plaintiff's motion for sanctions and a default judgment. *See* 1/11/23 Order (Dckt. No. 36). During the hearing, Judge Cole confirmed "that certain materials requested by the plaintiff had at long last been provided." *Id.*

But not everything. Defendants had not produced "bank statements and tax returns for the business" and "paystubs relating to the plaintiff." *Id.* Those documents were "undeniably relevant" to the case. *Id.*

Judge Cole acknowledged the earlier issues with defense counsel's health and the health of his nephew. Regardless, Judge Cole concluded that the discovery "omissions [were] unacceptable and cannot be explained either by some inadvertent omission by the defendant or by any health concerns or other issues the defense counsel may have with his nephew." *Id.*

Judge Cole set yet another deadline, ordering Defendants to produce the missing discovery by January 18, 2023. *Id.* And he offered another word of forewarning: "failure to provide the long overdue, missing documentation that was requested in discovery long ago, may also result in the entry of judgment by Judge Seeger." *Id.*

Given Judge Cole's ruling, Plaintiff withdrew his motion for sanctions and a default judgment without prejudice. *Id.* Judge Cole also awarded Plaintiff $4,520 in attorneys' fees and

costs. *See id.*; 1/11/23 Att'y Fees Order (Dckt. No. 37); 11/29/22 Schlade Aff., at ¶ 5 (Dckt. No. 29, at 10 of 11).

*Another Order from Judge Cole*

By this point, it's probably not hard for the reader to predict what happened next.

The answer? Nothing. Nothing from Defendants, that is. Defendants did not comply with Judge Cole's Order to provide the missing discovery materials by January 18, 2023.

Judge Cole issued yet another Order about Defendants' non-compliance. "Despite the history of this case, and the clarity of the Orders of this court, the defendant continues to be non-compliant with its basic discovery obligations." *See* 2/7/23 Order (Dckt. No. 39). Judge Cole cemented the point by citing four Orders. *Id.*

Judge Cole aptly summarized the situation: "Even after being ordered by this Court to provide information, overdue in discovery for almost a year, the defendants and their lawyer continue to ignore, not only the Orders of this Court, but the most basic obligations imposed by the discovery provisions of the Federal Rules of Civil Procedure." *Id.*

And then, Judge Cole put the non-compliance in historical perspective: "Indeed in my experience, I have not witnessed this kind of behavior by a party and his counsel in civil litigation." *Id.* When a statement like that comes from a jurist of the highest caliber like Judge Cole, it carries a great deal of weight.

Judge Cole previewed the filings on the horizon. "Plaintiff's counsel will be filing before Judge Seeger appropriate motions for entry of Default judgment and/or to compel compliance with here-to-for ignored Orders of this Court." *Id.*

11

*The Second Motion for Default Judgment*

Plaintiff then filed his second motion for sanctions and a default judgment on February 14, 2023. *See* Pl.'s 2/14/23 Mtn. for Default Judgment (Dckt. No. 40). That motion is now pending before the Court.

Plaintiff's motion noted that "[a]fter the February 7, 2023 hearing, Defendants made another partial discovery production including tax returns and some paystubs." *Id.* at ¶ 19. But, once again, Defendants did not produce everything. *Id.* Defendants had yet to produce bank account information (necessary to confirm Defendants' revenue), Sanchez's tax returns (necessary to determine enterprise liability under the FLSA), and copies of Defendants' bank statements (also necessary to determine FLSA enterprise liability). *Id.*

Defendants also had yet to pay the $4,520 in attorneys' fees and costs ordered by Judge Cole on January 11. *Id.* at ¶ 20.

Defendants responded to Plaintiff's motion on March 20, 2023 (again, with a late filing, but this Court later granted Defendants an extension). *See* Defs.' Resp. (Dckt. No. 44); *see also* 2/21/23 Order (Dckt. No. 41); 4/10/23 Order (Dckt. No. 46). They did "not dispute most of the allegations of fact alleged in Plaintiff's motion." *See* Defs.' Resp., at ¶ 1 (Dckt. No. 44).

And they "offer[ed] the sincerest of apologies." *Id.*

Defense counsel again explained the one-year delay by citing personal issues. In January 2023, he "came down with a very severe upper respiratory infection, causing [him] to miss more than 14 days." *Id.* at ¶ 8. Defense counsel admitted that he never contacted Plaintiff's counsel about his illness. *Id.*

Defense counsel also stated that "after recuperating from my upper respiratory infection, on March 2, 2023, feeling very fatigued and feverish, defense counsel tested positive with

12

COVID 19." *Id.* at ¶ 9. Putting that date in perspective, counsel tested positive more than two weeks after Plaintiff filed the second motion for a default judgment (on February 14).

Defendants suggested that, at long last, all was good. He represented that on March 20, 2023, defense counsel "emailed to plaintiff's attorney the balance of his discovery requests." *Id.* at ¶ 10. Defendants acknowledged that the $4,520 in attorneys' fees and costs remained unpaid because they were "financially unable to pay those sanctions." *Id.* at ¶ 13. Defendants represented that they were working "to figure out a reasonable payment plan for plaintiff's attorney's fees." *Id.*

**Analysis**

Rule 37 empowers district courts to sanction a party for failing to cooperate in discovery and comply with court orders. *See* Fed. R. Civ. P. 37. If a party "fails to obey an order to provide or permit discovery," the district court may "render[] a default judgment against the disobedient party." *See* Fed. R. Civ. P. 37(b)(2)(A)(vi). If the court imposes sanctions under Rule 37, then "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(b)(2)(C).

"A district court must impose a sanction proportional to the wrongdoing, but it need not impose the least severe sanction." *See United States v. Norwood*, 812 F. App'x 365, 370 (7th Cir. 2020). "Default judgment is strong medicine for discovery abuse." *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014).

Entering a default judgment against a disobedient party is an "ultimate sanction[]." *Norwood*, 812 F. App'x at 369. It ends the case in the opposing party's favor. So, to enter a

13

default judgment under Rule 37, a district court must make "a finding, either implicit or explicit, of willfulness, bad faith, or fault." *Id.* (citing *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001)).

The disobedient party must have "acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). The sanction must "be supported by fault, as shown by 'extraordinarily poor judgment' or 'gross negligence,' rather than mere mistake or inadvertence." *EEOC v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 599 (7th Cir. 2022) (quoting *Ramirez*, 845 F.3d at 776).

The Seventh Circuit has affirmed a district court's decision to enter a default judgment when the disobedient party "ignored the court for months" and missed "three explicit discovery deadlines." *Norwood*, 812 F. App'x at 370; *see also Domanus*, 742 F.3d at 300, 302 (affirming grant of default judgment against defendants for discovery abuses, including delay).

Viewed as a whole, the record provides a more-than-ample basis for entry of a default judgment. Defendants missed a series of deadlines. This Court and Judge Cole issued Order after Order, to no avail. Nothing has worked. Defendants have marched to their own drum, closing their ears to the recurring warnings from the Court about the need to comply.

District courts shouldn't have to beg parties to do what they're told. And a court shouldn't have to order order order a party to comply. No court could function that way. To make matters worse, it drains judicial resources to tell parties the same thing over and over.

It creates bad incentives, too. If parties think that they're entitled to umpteenth second chances, they're less likely to comply on the first, second, and third go-arounds.

When in the thick of things, it is sometimes difficult to tell when to give a litigant another chance. Courts are leery of pulling the plug on a case too soon, because the judiciary prefers to resolve cases on the merits. America is a land of second chances. But resolving cases on the

14

merits requires parties to comply with the procedures, and play by the rules. Looking back on the case from this vantage point, with the benefit of hindsight, it is clear that this Court gave Defendants plenty of warnings and plenty of rope.

The pronouncement from Judge Cole bears repetition: "Indeed in my experience, I have not witnessed this kind of behavior by a party and his counsel in civil litigation." *See* 2/7/23 Order (Dckt. No. 39). "[T]he defendants and their lawyer continue to ignore the plaintiff, this Court's Orders and the obligations imposed by the discovery provisions of the Federal Rules of Civil Procedure. It is this kind of cavalier approach that has prompted the Seventh Circuit in other contexts to voice in the sternest terms its displeasure with lawyers who choose to disregard rules." *Id.* Exactly right.

Given the history of noncompliance, this Court has no hesitation finding that Defendants are at fault for failure to comply with the Court's discovery Orders. *See* 2/7/23 Order (Dckt. No. 39). Defendants have shown "'extraordinarily poor judgment'" and "'gross negligence,' rather than mere mistake or inadvertence." *Wal-Mart Stores E., L.P.*, 46 F.4th at 599 (quoting *Ramirez*, 845 F.3d at 776).

True, Defendants represented to the Court that they had complied with all discovery requests as of March 20, 2023. *See* Defs.' Resp., at ¶ 10 (Dckt. No. 44). That's too little, too late. By that point, Defendants had disregarded multiple Court Orders setting explicit discovery deadlines. It was only after Plaintiff's *second* motion for sanctions and a default judgment that Defendants produced the required discovery materials. And that production followed Plaintiff's two motions to compel the discovery (one of which was granted).

Judges shouldn't have to issues orders and say "and this time I mean it."

15

Defense counsel has pointed to some personal issues as a reason for the repeated failures to comply. Like Judge Cole, this Court finds that explanation less than compelling. This Court gave defense counsel extra time – in fact, more time than he had requested – when he suffered a fall in 2022. *See* 6/1/22 Order (Dckt. No. 14). This Court is sympathetic to the problems of counsel's nephew, but those challenges do not explain or excuse the long string of failures. And the COVID-19 diagnosis came more than two weeks after the second motion for default judgment. By that point, the train had already left the station.

When you think of all-American rules, it is hard to beat three-strikes-and-you're-out. This Court has lost track of how many strikes Defendants have had. But whatever the number is, the strikes would fill the better part of an inning. It is enough to call Defendants out. The games are over, and so is the entire ballgame.

Based on the record as a whole, the Court finds that Defendants acted with willfulness, bad faith, and fault. The Court determines that a default judgment is the appropriate sanction for Defendants' longstanding failure to comply with the Federal Rules and a series of Court Orders. *See* Fed. R. Civ. P. 37(b)(2)(A).

Turning to the amount of the judgment, Plaintiff has shown that his unpaid wages total $14,900. *See* Giovanni Aff., at ¶ 6 (Dckt. No. 40, at 30 of 39). Under the Illinois Minimum Wage Law, Giovanni is entitled to treble damages and 5% monthly interest. *See* 820 ILCS 105/12(a). That amount equals $68,709. *See* Giovanni Aff., at ¶ 8 (Dckt. No. 40, at 30 of 39). That amount does not include double recovery under the FLSA.

As noted, Judge Cole already awarded Plaintiff $4,520, including $3,960 in attorneys' fees and $560 in costs. *See* 1/11/23 Order (Dckt. No. 36); 1/11/23 Att'y Fees Order (Dckt. No. 37); 11/29/22 Schlade Aff., at ¶ 5 (Dckt. No. 29, at 10 of 11); *see also* Fed. R. Civ. P.

37(b)(2)(C). Since then, Plaintiff has incurred an additional $1,240 in reasonable attorneys' fees. *See* 2/14/23 Schlade Aff., at ¶ 5 (Dckt. No. 40, at 38 of 39).

The Court awards attorneys' fees and costs totaling $5,760. That figure includes the attorneys' fees awarded by Judge Cole ($3,960), plus additional attorneys' fees awarded by this Court ($1,240), plus costs awarded by Judge Cole ($560).[1]

Adding $62,949 in damages to $5,760 in attorneys' fees and costs gets a total judgment amount of $68,709. Any attorneys' fees and costs already paid in response to Judge Cole's Order (if any) will be credited against this judgment amount.

## Conclusion

Plaintiff Galindo's motion for entry of default judgment is hereby granted. The Court will enter final judgment by separate order, as required by Rule 58(a) of the Federal Rules of Civil Procedure.

Date: April 27, 2023

Steven C. Seeger
United States District Judge

---

[1] The Court declines to double count the $4,520 in attorneys' fees and costs awarded by Judge Cole as a separate sanction. *See* Pl.'s 2/14/23 Mtn. for Default Judgment, at ¶ 26 n.1 (Dckt. No. 40). The reasonable attorneys' fees and costs will be counted only once.